UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. C-12-181 |
| | § | |
| DOLPH FINLEY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTION TO SUPPRESS

On April 24, 2012, the Defendant's Motion to Suppress (D.E. 20) came on for hearing. The Government presented the testimony of the following United States Border Patrol Agents, all of whom the Court found to be credible witnesses: Kevin Noegel, Santiago R. DeLeon, Aaron Torres, David Ford, and Richard Blackwell. The agents described their respective contributions to the subject investigation in consistent terms as follows:

**FACTS**

On February 18, 2012 at approximately 1:30-2:00 a.m., an Americanos bus arrived at the Sarita Checkpoint near Kingsville, Texas, along with a white Jeep within five minutes of each other. During Agent DeLeon's routine primary inspection of the Jeep, he and his canine conducted a non-intrusive free air sniff and the canine alerted to drugs in the front passenger area. The driver, Thomas Lubecke, was directed to the secondary inspection area. After obtaining consent to search the Jeep, agents found small quantities of marijuana, cocaine, and Xanax in a soft-sided briefcase in the front passenger area of the car. These drugs were wrapped in black plastic.

Also found in Lubecke's Jeep was a large black "All Star" duffle bag, containing two additional identical duffle bags, black plastic, motor oil or grease, a half-full box of Bounce dryer sheets, and 409-brand spray cleaner. Agents testified that these supplies were known to them to be used to package narcotics, clean off the packaging, and mask the odor of narcotics in order to evade canine detection.

Included among the items in the Jeep were two receipts for the items found. A receipt from an Academy store reflected the recent purchase of four identical All Star duffle bags, whereas only three such bags were located in the Jeep. The Agents, based on their experience and training, noted that Lubecke had material known for packaging large quantities of drugs for purposes of transport. Missing from the puzzle were one large duffle bag and any large quantity of drugs.

Agents testified that drug traffickers commonly transport drugs through and around the Sarita Checkpoint in trains, on buses, and by foot, with a separate "scout" vehicle traveling with the drugs. They testified that the scout vehicle often contains a small "personal use" quantity of drugs that are used to distract agents from the potential discovery of the large bundle, while involving arrest and citation procedures that allow the driver of the scout vehicle to be released within hours after detection. They also testified that buses are used for the main transport because the luggage containing the drugs does not have to be tagged with a name, allowing the transporter some "distance" or deniability. Lubecke had every appearance of being the driver of a scout vehicle and a bus had arrived at the checkpoint at about the same time.

In searching Lubecke's phone, Agent Blackwell discovered that Lubecke had been texting messages that indicated that he had traveled to south Texas with a person named Dolph or Adolph for the purpose of purchasing narcotics.  They also found several pictures related to drugs, the measurement or weighing of drugs, and drug transactions.  The phone was running a GPS application that indicated a route of travel from a Valley Transit Company bus terminal south of the Sarita Checkpoint to a Houston bus terminal north of the checkpoint.

At the time Lubecke arrived at the checkpoint, the only other vehicle traveling through was the Americanos bus.  Agents had conducted an immigration search of the bus passengers and a separate canine unit, with handler, Agent Torres, searching the luggage department.  At the time of the search, Agent Torres did not notice any drug alert from the canine.  However, the luggage compartment had few bags in it and Agent Torres happened to notice that one was a large black All Star bag.  The bus was cleared and was permitted to continue traveling north.

In the meantime, Agent Ford began interviewing Lubecke.  In answer to questions, Lubecke claimed that he had traveled to the Valley to purchase pottery to resell in Louisiana.  He claimed that the packaging materials and duffle bags were for packaging the pottery to avoid damage.  But he had no explanation for the fact that he did not have any pottery with him.  He said he had been traveling for four days, but that he did not have any clothes with him because he had spilled something on them and had to throw them all away.  Lubecke's story was clearly a fabrication.

When Agent Torres was relieved from his traffic duty at 2:30 a.m., he talked with Agent DeLeon and noticed the black All Star duffle bag that was part of the Lubecke investigation. Agent Torres reported to Agent DeLeon that he had seen an identical bag on the Americanos bus. The agents, combining their respective observations, concluded that it was very likely that the All Star duffle bag on the bus was the "missing" bag from Lubecke's purchase and most likely contained the drugs that had been packaged with the supplies that Lubecke had bought, the remainder of which were found in his Jeep.

After this conversation with Agent Torres, at approximately 3:00 a.m., Agent DeLeon made a telephone call to agents in Corpus Christi, Texas, explaining what the Border Patrol agents had discovered, and asking them to follow the bus if they encountered it to make sure no one got off with the duffle bag. Officers later stopped the bus in Refugio, Texas where they conducted a search that uncovered the missing black All Star duffle bag, packed with marihuana, and Dolph Finley.

## LAW

Complaining that the stop of the bus violated the Fourth Amendment of the United States Constitution, Defendant Dolph Finley seeks to suppress the evidence obtained as a result of that search and seizure. The burden to justify a warrantless search lies on the Government. *United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir.), *cert. denied*, 431 U.S. 932 (1977). Under *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968), a law enforcement officer may conduct a brief, investigatory stop of a vehicle when the officer can articulate specific facts and rational inferences that create a reasonable suspicion that criminal activity is afoot. The test to be applied is the "totality of the circumstances." *United*

*States v. Arvizu*, 534 U.S. 266, 273-74 (2002).  In that regard, officers may draw on their own experience and specialized training to make appropriate inferences and deductions. *Id*. at 273. Officers may also compare notes under the "collective knowledge" doctrine such that each officer involved in an investigation is deemed to act on the collective knowledge of the other officers involved.  *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978).

## CONCLUSION

The officers conducted a sufficient investigation to support their articulation of specific facts that amount to "reasonable suspicion" that criminal activity was afoot with respect to the Americanos bus and the luggage it carried.  Defendant's Motion to Suppress (D.E. 20) is **DENIED**.

ORDERED this 25th day of April, 2012.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE